## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ————————————————— X : | |
| **JON Q. WRIGHT  and JQ LICENSING, LLC** : | |
| : | **Case No.:** |
| : | |
| **Plaintiffs,** : | |
| : | |
| : | **COMPLAINT FOR** |
| **v.** : | **COPYRIGHT** |
| : | **INFRINGEMENT** |
| : | |
| **ROCHESTER SPORTFISHING, INC.,** : | |
| **ROCHESTER MARINE DECKING, LLC, d/b/a** : | |
| **DEKIT OF ROCHESTER, KEVIN MAMMANO** : | |
| **a/k/a KIP MAMMANO, and BRANDON WHITE** : | |
| : | |
| **Defendants.** : | |
| ————————————————— X | |

## COMPLAINT

Plaintiffs Jon Q. Wright ("JQW") and JQ Licensing, LLC (collectively, the "Plaintiffs"), by and through their undersigned attorney, hereby pray to this honorable Court for relief based on the following:

## INTRODUCTION

1.     This action arises from Defendants' willful copyright infringement of Plaintiffs' copyrighted and valuable illustrations. Plaintiffs seek to obtain injunctive relief against Defendants Rochester Sportfishing, Inc. ("RSF"), Rochester Marine Decking, LLC d/b/a DEKit of Rochester ("Rochester DEKit"), Kevin Mammano a/k/a Kip Mammano ("Mammano") and Brandon White ("White") (collectively,  the "Defendants") to stop their continuing infringement and prevent any further unlawful infringement of Plaintiffs' works of art.   Defendants' infringements have damaged Plaintiffs' business and threatens to damage it further. Plaintiffs seek injunctive relief,

1

declaratory relief, and damages for the full amount of Plaintiffs' losses, as well as Defendants' profits, or if elected, statutory damages, as well as attorneys' fees, and costs pursuant to 17 U.S.C. §§ 504(c) and 505.

## THE PARTIES

2.      Plaintiff Jon Q. Wright is an individual domiciled and residing in the State of Montana and author of numerous fish illustrations, including the two works of art that are the subject of this litigation (the "Subject Works"), shown *infra*.

3.      Wright is the author and owner of the Subject Works.

4.      Wright is a member of JQ Licensing LLC, a limited liability company duly formed under the laws of the State of Minnesota and registered in the State of Montana as a foreign limited liability company (hereafter, "JQ Licensing").  Wright licenses his artwork exclusively through JQ Licensing.

5.      Defendant RSF is a corporation formed and existing under the laws of the State of New York, with a principal place of business in Rochester, New York

6.      Defendant Rochester DEKit  is a limited liability company formed and existing under the laws of the State of New York, with a principal place of business in Rochester, New York.

7.      Defendant Mammano is an individual residing in, or around, Rochester, New York.

8.      Defendant White is an individual residing in, or around, Rochester, New York.

9.      Mammano and White are the joint owners, operators, managers, officers, etc., for both RSF and Rochester DEKit.

## JURISDICTION AND VENUE

10.     This is an action for copyright infringement arising under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended).

11.     This Court has subject matter jurisdiction over Plaintiffs' copyright infringement claims under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended) and 28 U.S.C. §§ 1331 and 1338.

12.     Venue is proper in this district under 28 U.S.C. §§ 1391 and 1440 in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred and the judicial district wherein the Defendants can be found.

**PLAINTIFFS' WORKS OF ART**

13.     In 2000, JQW authored several fish illustrations, including Legends Series Artwork: Salmon ("Legends Salmon"), which consists of a highly detailed depiction of a salmon fish, and is depicted directly below:



14.     JQW duly registered Legends Salmon with the U.S. Copyright Office under Registration No. VA 1-153-915, as a collection of illustrations of different species of fish, all authored by JQW. This registration, entitled "Legends Series Artwork," has an effective date of June 1, 2001.  A copy of the Legends Series Artwork registration certificate is annexed hereto as **Exhibit A**.

15.     In 1993, authored a fish illustration, titled "Salmon Trolling," of a highly detailed salmon fish that gives the viewer the impression that the salmon is chasing after the lure underwater, and which is depicted directly below:



16.     JQW duly registered Legends Salmon with the U.S. Copyright Office under Registration No. VAu 1-504-021. This registration, entitled "Salmon Trolling," has an effective date of June 22, 2023.  A copy of the Salmon Trolling registration certificate is annexed hereto as **Exhibit B**.

17.     JQW's practice of creating highly detailed and unique wildlife illustrations is an extraordinarily time-consuming process, involving a dizzying multiplicity of steps.

18.     In order to create his detailed fish illustrations, including the Subject Works, JQW first faces the laborious task of catching a trophy-sized specimen of the subject fish.

19.     Once a trophy fish is caught, JQW takes detailed photographs of the fish, freezes, and then partially thaws the fish in order to mold the body into the desired position.  He then impales the

fish with numerous stakes to preserve the particular and desired pose, then captures a 360°

perspective of the manipulated through a series of photographs.

20.     Only then does JQW begin the sketching process, referring to the photographs as reference

material.

21.     JQW then takes numerous artistic liberties with certain aspects of each fish. He expresses

elements of each fish in a manner that is creative and unique to his style and artistic abilities.

22.     With both of the Subject Works, JQW has taken creative license with certain body parts,

including but not limited to, body and tail length to depict the fish "in action," swimming in

freshwater, jumping from the water, or to otherwise give the viewer the impression that the fish is

"trophy sized" by creatively manipulating the size, shape, and direction of anatomical features in

ways which are not possible to fish in nature.

23.     JQW's artwork has been painstakingly created, with each minute original detail being

depicted with precision.

24.     JQW estimates that he has spent hundreds of hours painting a single one of his fish

illustrations, touching each individual painted fish scale with a paintbrush between three and five

times.

25.     JQW artwork is very valuable, as there are not many artists painting freshwater fish, and

even fewer creating works with the type of detail employed by JQW.

26.     Because of JQW's unique talents, painstaking attention to detail, and unique expression of

fish of all species, his artwork is highly pursued.

27.     JQW's success as a wildlife illustrator, and by implication the value of his artwork, is

dependent on experience, patience, and dedication, and each of his paintings is built on his talent

and 40 years of expertise.

### INFRINGING CONDUCT RELATING TO SALMON TROLLING

28.     Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

29.     RSF is a charter fishing company operating out of Rochester, New York, in which customers pay to have Mammano and/or White captain a boat into the waters of Lake Ontario and thereafter fish those waters.

30.     In order to promote, advertise, or otherwise market the RSF business, Defendants, and each of them, designed, created, copied, reproduced, distributed, displayed, and/or otherwise exploited the artistic heart of Salmon Trolling on one of their boats (the "Infringing Boat Design").

31.     As demonstrated below, Defendants' boat features a virtually identical copy of Salmon Trolling:



32.     In order to promote, advertise, or otherwise market the RSF business, Defendants, and each of them, designed, created, copied, reproduced, distributed, displayed, and/or otherwise exploited Salmon Trolling by incorporating the same on various marketing/promotional material, including stickers applied to water coolers, clothing, and decals applied to Mammano's and White's personal automobiles (collectively, the "Infringing Marketing Material").

33.     As demonstrated below, the Infringing Marketing Material features a virtually identical copy of Salmon Trolling:







34.     The above photographs and visual comparisons herein demonstrate that Defendants copied Salmon Trolling, in virtually every aspect, and incorporated the Subject Work as part of the Infringing Logo.

35.     The artwork within the Infringing Boat Design, and the Infringing Marketing Material, contains an exact, or virtually identical copy of the central creative element of Salmon Trolling, namely the salmon fish, and upon information and belief, the background art of the surface water, depicted with the sunlight piercing through the water to "give light" to the salmon.

36.     A comparison of Salmon Trolling (top) and an exemplar photograph of the Infringing Boat Design (bottom)  is reproduced directly below:



37.     A comparison of Salmon Trolling (top) and an exemplar image of the Infringing Marketing Material (bottom)  is reproduced directly below.





38.     Directly below is an image wherein the salmon fish of Salmon Trolling is overlayed the Infringing Marketing Material and set to 50% opacity such that both images are equally visible:



39.     The visual comparisons above demonstrate an unlawful copying of protectible and highly specific elements of expression, including, but not limited to a) positioning/placement of the fin, tail, body, and other particularized expressions of anatomical features, b) the proportions of the various anatomical features relative to one another, c) the shading and coloring of different areas of the salmon, d) the particular shape and size of the fins, tails, and other anatomical features, e) the pose of the salmon, f) the "aggressive intent" as depicted in the facial features of the salmon, e) highly specific and detailed line work across the fish, such as those on each fin, gill, etc., and g) the highly specific spot pattern/stippling on the salmon.

40.     All of the visual comparisons herein demonstrate that Defendants copied Salmon Trolling and the central element of Salmon Trolling, in virtually every aspect, and incorporated the same as part of the artwork on their boat, and the Infringing Marketing Material, for commercial purposes.

41.     Defendants, and each of them, published, reproduced, or otherwise displayed photographs and videos containing the Infringing Boat Design and the Infringing Marketing Material on the RSF website, social media pages.

42.     Defendant Mammano and White published, reproduced, or otherwise displayed photographs and videos containing the Infringing Boat Design and the Infringing Marketing Material onto their personal social media pages.

43.     Defendants, and each of them, continued to exploit the Infringing Boat Design and Infringing Marketing Material through April of 2024, including but not limited to, distributing Infringing Marketing Material to local television news stations so that the Infringing Marketing Material can be featured as additional promotional efforts during news segments concerning RSF's business.

44.     Defendants, and each of them, treated the news segments as opportunities to further market, promote, and/or advertise both the RSF and Rochester DEKit businesses, and in so doing, exploited both of the Subject Works for those purposes.

45.     Defendants, and each of them, frequently and regularly published, displayed, and/or reproduced new posts, images, photographs, videos, or other content to the RSF website and social media pages containing the Infringing Boat Design and the Infringing Marketing Material through April 2024.

46.     Upon information and belief, and in each year in which Defendants exploited the Infringing Boat Design, Defendants, and each of them, stored the boat bearing the Infringing Boat Design in a private facility and/or and covered it during the winter months, and then in the warmer months in which the boat was in use, brought the boat to a public space and/or uncovered the boat, thereby publicly displaying the Infringing Boat Design.

47.     The allegations herein are made as to all material, products, photographs, advertisements, etc., that Defendants used, created, copied, marketed, displayed, distributed, or sold that incorporate and/or copy Salmon Trolling, or any part thereof, and the images and comparisons depicted herein are only exemplars.

48.     Defendants Mammano and White, are the sole members, directors, officers, and/or shareholders of RSF, and maintain exclusive control, management, and operation of RSF.

49.     Mammano and White personally participated in the infringing acts described herein by, at the very least, one or more of the following infringing acts: (a) displaying or otherwise publishing the Infringing Boat Design and the Infringing Marketing Material to the RSF website and social media pages, (b) creating and designing the Infringing Boat Design and the Infringing Marketing Material; (c) reproducing Salmon Trolling as part of the Infringing Boat Design and the Infringing Marketing Material; (d) displaying and distributing the Infringing Marketing Material at in-person events; (e) instructing, directing, or otherwise causing the creation of the Infringing Boat Design and the Infringing Marketing Material; and/or (f) distributing Infringing Marketing Material to local television news stations.

50.     Defendants' individual and joint infringing acts were undertaken to reap the creative and artistic benefit and value of Salmon Trolling.

51.     By failing to obtain Plaintiffs' authorization to use Salmon Trolling., or to compensate Plaintiffs for the use, Defendants avoided payment of license fees and other financial costs associated with obtaining permission to exploit Salmon Trolling., as well as the restrictions that Plaintiffs are entitled to, and would place, on any such exploitation as conditions for Plaintiffs' permission, including the right to deny permission altogether.

52.     Defendants had access to Salmon Trolling, including, without limitation, through Plaintiff JQ Licensing's website and social media accounts or by viewing Salmon Trolling on third-party websites.

53.     Defendants willfully misappropriated Salmon Trolling, and with blatant and reckless disregard for Plaintiffs' rights in and to the Salmon Trolling, by failing to ensure its use of the same was proper, despite the fact that Defendants knew, or should have known, of its infringing nature.

54.     In March of 2024, Plaintiffs discovered Defendants' acts of infringement, as alleged herein, and thereafter notified Defendants of Plaintiffs' copyrights to Salmon Trolling and demanded that Defendants cease and desist in their infringing conduct, as alleged herein.

55.     After receiving Plaintiffs' first cease and desist letter, Defendants, and each of them, continued to infringe on Plaintiffs' copyrights by, at the very least, continuing to display Infringing Marketing Material on the Defendants' website and social media accounts, failing to remove the Infringing Boat Design, and by distributing Infringing Marketing Material to one or more television broadcast stations which were then reproduced by the television broadcast stations and displayed on television and on the internet.

56.     Defendants continuing acts of infringement after receipt of the Plaintiffs' notice of rights amounts to a blatant and reckless disregard for Plaintiffs' rights in and to Salmon Trolling.

57.     As a result of Defendants' infringement of Plaintiffs' copyrights in and to Salmon Trolling, Plaintiffs have suffered significant damage, including but not limited, lost royalties and licensing revenue and have suffered dilution and diminishment of the value of Salmon Trolling.

## **INFRINGING CONDUCT RELATING TO LEGENDS SALMON**

58.     Plaintiffs repeat, reallege, and incorporate the allegations contained in paragraphs 1-27 of this Complaint as if fully set forth herein.

59.     Rochester DEKit is in the business of outfitting fishing boats with decking/protective material and has the ability to produce custom products for customers, including decking/protective material with high quality artwork.

60.     In order to promote, advertise, or otherwise market the their business, Defendants Rochester DEKit, Mammano, and White designed, created, copied, reproduced, distributed, displayed, and/or otherwise exploited Legends Salmon onto a piece of decking/protective material (the "Infringing Decking Sample")  in order to demonstrate these Defendants'  design/production capabilities.

61.     In February 2024, Defendants Rochester DEKit, Mammano, and White, while operating an exhibition booth at the Greater Niagra Fishing Expo, displayed the Infringing Decking Sample.

62.     While at the Greater Niagara Fishing Expo, Defendants Rochester DEKit, Mammano, and White created a video featuring the Infringing Decking Sample and published the same to their social media pages.

63.     At least one other third-party also created videos featuring the Infringing Decking Sample while at the Greater Niagara Fishing Expo, which were then published onto the third-parties' social media page. Defendants Rochester DEKit, Mammano, and White then republished, distributed, or otherwise exploited the video containing the Infringing Decking Sample onto their own social media pages.

64.     Upon information and belief, RSF displays, distributes, or otherwise exploits the Infringing Decking Sample in order to promote Rochester DEKit.

65.     As demonstrated below, the Infringing Decking Sample features an exact copy of the

central creative element of Legends Salmon (right):



66.     Directly below is an image wherein the salmon fish of Legends Salmon is overlayed the

Infringing Decking Sample and set to 50% opacity such that both images are equally visible:



67.    The above visual comparisons herein demonstrate that Defendants copied Legends Salmon and incorporated Legends Salmon into the Infringing Decking Material for commercial purposes.

68.    The artwork within the Infringing Decking Material, contains an exact, or virtually identical copy of the central creative element of Legends Salmon, namely the salmon fish.

69.    The visual comparisons above demonstrate an unlawful copying of protectible and highly specific elements of expression, including, but not limited to a) positioning/placement of the fins, tail, body, and other particularized expressions of anatomical features, b) the proportions of the various anatomical features relative to one another, c) the shading and coloring of different areas of the salmon, d) the particular shape and size of the fins, tails, and other anatomical features, e) the pose of the salmon, f) the "aggressive intent" as depicted in the facial features of the salmon, e) highly specific and detailed line work across the fish, such as those on each fin, gill, etc., and g) the highly specific spot pattern/stippling on the salmon.

70.    Defendants, Rochester DEKit, Mammano, and White published, reproduced, or otherwise displayed photographs and videos containing the Infringing Decking Sample onto the internet, including Rochester DEKit's social media page.

71.    Defendant Mammano and White published, reproduced, or otherwise displayed photographs and videos containing the Infringing Decking Sample onto their personal social media pages.

72.    Defendants Rochester DEKit, Mammano, and White treated the news segments concerning RSF as opportunities to further market, promote, and/or advertise Rochester DEKit businesses, and in so doing, exploited the Infringing Decking Sample.

73.    The allegations herein are made as to all material, products, photographs, advertisements, etc., that Defendants used, created, copied, marketed, displayed, distributed, or sold that

incorporate and/or copy Legends Salmon, or any part thereof, and the images and comparisons depicted herein are only exemplars.

74.     Defendants Mammano and White, are the sole members, directors, officers, and/or shareholders of Rochester DEKit, and maintain exclusive control, management, and operation of Rochester DEKit.

75.     Mammano and White personally participated in the infringing acts described herein by, at the very least, one or more of the following infringing acts: (a) displaying or otherwise publishing the Infringing Decking Sample at the Greater Niagara Fishing Expo; (b) creating and designing the Infringing Decking Sample; (c) reproducing Legends Salmon as part of the Infringing Decking Sample; (d) displaying and distributing Infringing Decking Sample while operating the RSF business to RSF customers; (e) instructing, directing, or otherwise causing the creation of the Infringing Decking Sample; and/or (f) displaying the Infringing Decking Sample while television news stations produced their news segments concerning RSF's business; and/or (g) directing, requesting, instructing, or otherwise permitting television news stations to incorporate the Infringing Decking Sample in their news segment, which was displayed on the internet and on television.

76.     Defendants' individual and joint infringing acts were undertaken to reap the creative and artistic benefit and value of Salmon Trolling.

77.     By failing to obtain Plaintiffs' authorization to use Infringing Decking Sample, or to compensate Plaintiffs for the use, Defendants avoided payment of license fees and other financial costs associated with obtaining permission to exploit Infringing Decking Sample, as well as the restrictions that Plaintiffs are entitled to, and would place, on any such exploitation as conditions for Plaintiffs' permission, including the right to deny permission altogether.

78.     Defendants had access to Infringing Decking Sample, including, without limitation, through Plaintiff JQ Licensing's website and social media accounts or by viewing Infringing Decking Sample on third-party websites.

79.     Defendants willfully misappropriated Infringing Decking Sample and with blatant and reckless disregard for Plaintiffs' rights in and to the Infringing Decking Sample, by failing to ensure its use of the same was proper, despite the fact that Defendants knew, or should have known, of its infringing nature.

80.     In March of 2024, Plaintiffs discovered Defendants' acts of infringement, as alleged herein, and thereafter notified Defendants of Plaintiffs' copyrights to Legends Salmon and demanded that Defendants cease and desist in their infringing conduct, as alleged herein.

81.     Despite receiving two correspondences from Plaintiffs, Defendants continue to exploit the Infringing Decking Sample by continuing to display photographs and videos that feature the Infringing Decking Sample, and upon information and belief, continuing to display the Infringing Decking Sample to potential customers and other third-parties.

82.     Defendants continuing acts of infringement after receipt of the Plaintiffs' notice of rights amounts to a blatant and reckless disregard for Plaintiffs' rights in and to Legends Salmon.

83.     As a result of Defendants' infringement of Plaintiffs' copyrights in and to Legends Salmon, Plaintiffs have suffered significant damage, including but not limited, lost royalties and licensing revenue and have suffered dilution and diminishment of the value of Legends Salmon.

## COUNT I
### (COPYRIGHT INFRINGEMENT – 17 U.S.C. §101, *et seq.* -
### Against All Defendants and Each)

84.     Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

85.    JQW is the sole owner of the Subject Works and holds valid copyright registrations in accordance with the United State Copyright Act.

86.    The Subject Works are copyrightable subject matter under 17 U.S.C. §102(a).

87.    JQW has complied in all respects with the provisions and requirements of the Copyright Act.

88.    Prior to the acts complained of herein, JQW duly registered the copyrights in and to the Subject Works with the United States Copyright Office.

89.    JQW has exclusive rights under 17 U.S.C. §106 to reproduce, prepare derivative works of, distribute copies of, and publicly display the Subject Works.

90.    Upon information and belief, Defendants, and each of them, had access to the Subject Works through (a) viewing Plaintiffs' online portfolio; (b) viewing and/or purchasing licensed exploitations of the Subject Works; and/or (c) viewing and/or downloading illegally reproduced, imported, and/or distributed copies of the Subject Works by third parties.

91.    Access is also established by the striking similarity and/or identicality between the Subject Works and the respective salmon fish artwork exploited by Defendants, precluding any possibility of independent creation.

92.    As detailed *supra*., the Infringing Boat Design, Infringing Marketing Material, and Infringing Decking Sample are identical or virtually identical to the respective Subject Works.

93.    As detailed *supra*., The salmon fish in the Infringing Boat Design, Infringing Marketing Material, and Infringing Decking Sample are identical to the salmon fish in the respective Subject Works.

94.    The Infringing Boat Design, Infringing Marketing Material, and Infringing Decking Sample copy all or virtually all protectable elements of expression unique to JQW's artistic style, as well as his creative and particular expressions of a crappie fish, as described herein.

95.    The Subject Works, as well as the salmon featured therein, are the by-product of JQW's creative and original selection, coordination, and arrangement of elements.

96.    Defendants, and each of them, have infringed Plaintiffs' rights by copying the Subject Works and subsequently creating, making and/or developing directly infringing works and/or derivative works featuring the Subject Works.

97.    Defendants, and each of them, have infringed Plaintiffs' rights by copying the creative and original selection, coordination, and arrangement of elements.

98.    Defendants, and each of them, were directly involved in the reproduction, distribution, display, adaptation, and/or creation of a derivative work, using the Subject Works.

99.    Due to Defendants' acts of copyright infringement as alleged herein, Plaintiffs have suffered damages in an amount to be established at trial, including without limitation lost profits, royalties, and a diminution in the value of the misappropriated works.

100.    As a result of the acts of infringement complained of herein, Defendants received revenues it would not have otherwise received, added brand value, and indirect sales and profits it would not have otherwise received.

101.    Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Works.  As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

102.    Defendants, and each of them, have committed copyright infringement with actual or constructive knowledge of Plaintiffs' rights such that said acts of copyright infringement were willful, reckless, malicious, and in blatant disregard of Plaintiffs' rights. Such willfulness provides the basis on which Plaintiff seeks additional forms of relief.

103.    In the alternative, Plaintiffs claim statutory damages under 17 U.S.C. §504(c)(1) for Defendants' negligent unauthorized use and copyright infringement.

104.    Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

## COUNT II
### (SECONDARY COPYRIGHT INFRINGEMENT – Vicarious Infringement)

105.    Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

106.    To the extent that Infringing Boat Design, Infringing Marketing Material, and Infringing Decking Sample were created by a presently unknown third party, Defendants, and each of them, are vicariously liable for the direct infringement alleged herein because Defendants had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

107.    Defendants, and each of them, have full control over, and final decision-making authority, over the content of any marketing, advertising, or promotional material, including the Infringing Boat Design, Infringing Marketing Material, and Infringing Decking Sample.

108.    Defendants, and each of them, maintain a right and practical ability to stop or limit the direct infringement of the presently unknown third parties, yet declined to do so, namely that Defendants; (a) had the ability to review, approve, decline, or otherwise supervise the creation of marketing, advertising, and promotional material created for Defendants, including but not limited to the Infringing Boat Design, Infringing Marketing Material, and Infringing Decking Sample;

22

and/or (b) controlled their respective websites and social media pages and had the practical ability to publish and remove content, including the Infringing Boat Design, Infringing Marketing Material, and Infringing Decking Sample, and photographs and videos of the same.

109.    By commercially exploiting Infringing Boat Design, Infringing Marketing Material, and Infringing Decking Sample, Defendants failed to exercise their right and ability to stop or limit infringing behavior.

110.    Defendants, and each of them, failed to perform any due diligence concerning the Subject Works, whether they are available for commercial exploitation, and whether a license is required.

111.    Defendants had an obvious and direct financial interest in the unlicensed copying, reproduction, distribution, and display of Infringing Boat Design, Infringing Marketing Material, and Infringing Decking Sample as the same were used to promote, market, and advertise Defendants and their businesses,  draw relevant individuals Defendants' websites and businesses and generate revenue from the sale of their services.

112.    The Infringing Boat Design, Infringing Marketing Material, and Infringing Decking Sample serves as a "draw" for customers.

113.    Mammano and White, as the sole owners/shareholders of RSF and DEKit of Rochester, had a direct and obvious financial interest in the unlicensed copying, reproduction, distribution, and display of Infringing Boat Design, Infringing Marketing Material, and Infringing Decking Sample because all revenues flow directly to Mammano and White.

114.    Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Work.  As such, Plaintiffs are entitled to disgorgement of Defendants'

profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

115.    Upon information and belief, Defendants' has committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Clarke to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00) per infringement.  Within the time permitted by law, Plaintiffs will make their election between actual damages and statutory damages.

116.    Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

### COUNT II
### (SECONDARY COPYRIGHT INFRINGEMENT – Contributory Infringement)

117.    Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

118.    Defendants, and each of them, knowingly induced, participated in, aided and abetted in, and profited from the illegal use of the Subject Works as alleged herein.

119.    Despite clear and unequivocal knowledge of the infringing nature of the Infringing Boat Design, Infringing Marketing Material, and Infringing Decking Sample, Defendants encouraged, induced, or otherwise materially contributed to, third parties creating television news segments featuring the Subject Works.

120.    At the very least, and upon notice of Plaintiffs' rights to the Subject Works, Defendants were able to take steps to stop further infringing activity of third parties, however failed to do so.

121.    Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Works.  As such, Plaintiffs are entitled to disgorgement of Defendants'

profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

122.    Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Works.  As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Works, in an amount to be established at trial.

123.     Upon information and belief, Defendants' has committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Clarke to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00) per infringement.  Within the time permitted by law, Plaintiffs will make their election between actual damages and statutory damages.

124.    Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests judgment against Defendants, and each of them, as follows:

A.  that the Court enter judgment against Defendants setting forth that Defendants have willfully infringed Plaintiffs' federally registered copyrights to the Subject Works as contemplated by 17 U.S.C. §504(c)(2);

B.  alternatively, that the Court enter judgment against Defendants setting forth that Defendants have infringed Plaintiffs' federally registered copyright to the Subject Works, pursuant to 17 U.S.C. § 501;

C.  that Defendants and their respective agents, officers and servants be enjoined from importing, manufacturing, distributing, displaying, offering for sale, selling or otherwise trafficking in any materials that infringe Plaintiffs' copyrights in and to Subject Works;

D.  impounding all unauthorized material that bears infringing copies of Plaintiffs' copyrighted artwork in the possession or control of Defendants pursuant to 17 U.S.C. §503(a)(1)(A), and ordering destruction of all unauthorized material bearing the Subject Works, pursuant to 17 U.S.C. §503(b);

E.  that Plaintiffs be awarded all profits of Defendants plus all losses of Plaintiffs, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages for willful infringement as available under 17 U.S.C. § 504(c);

F.  that Plaintiffs be awarded their attorneys' fees as available under 17 U.S.C. § 504(c) or other applicable statute;

G.  that Plaintiffs be awarded pre- and post-judgment interest as allowed by law;

H.  that Plaintiffs be awarded the costs of this action; and

I.  that Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO FED. R. CIV. P. 38 AND THE 7TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Respectfully submitted,

Date:  April 23, 2024

/s/ Dmitry Lapin

Dmitry Lapin, Esq.
Axenfeld Law Group, LLC
2001 Market Street Suite 2500
Philadelphia, PA 19103
dmitry@axenfeldlaw.com
917-979-4570

*Attorneys for Plaintiffs Jon Q. Wright, and
JQ Licensing, LLC*