UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JON Q. WRIGHT and JQ LICENSING, LLC,

                Plaintiffs,

      v.

ROCHESTER SPORTFISHING, INC.,
ROCHESTER MARINE DECKING, LLC, *d/b/a*
DEKIT OF ROCHESTER, KEVIN MAMMANO
*a/k/a* KIP MAMMANO, BRANDON WHITE,
and PALMER GRAPHIC SOLUTIONS LLC
*d/b/a* VITAL SIGNS AND GRAPHICS,

                Defendants

**DECISION AND ORDER**

6:24-CV-06240 CJS CDH

## **INTRODUCTION**

Plaintiffs Jon Q. Wright ("Mr. Wright") and JQ Licensing, LLC ("JQ Licensing") (collectively "Plaintiffs") assert claims of copyright infringement under 17 U.S.C. § 101 *et seq.* against defendants Rochester Sportfishing, Inc. ("RSF"), Rochester Marine Decking, LLC, d/b/a DEKit of Rochester ("DEKit"), Kevin Mammano a/k/a Kip Mammano ("Mr. Mammano"), and Brandon White ("Mr. White") (collectively "Defendants").[1] (Dkt. 1; Dkt. 33). Plaintiffs claim that Defendants engaged in "willful copyright infringement of Plaintiffs' copyrighted and valuable illustrations" to "promote, advertise, or otherwise market" the RSF and DEKit businesses. (Dkt. 1 at ¶¶ 1, 30, 32, 60; Dkt. 33 at ¶¶ 1, 31, 33, 77).

---

[1]    The amended complaint also named a fifth defendant, Palmer Graphic Solutions LLC d/b/a Vital Signs and Graphics. (Dkt. 33 at ¶¶ 1, 10). This defendant has not appeared and a Clerk's Entry of Default as to it was entered on December 5, 2024. (Dkt. 39).

On April 7, 2025, the Court granted in part and denied in part Plaintiffs' motion to compel Defendants to serve answers to Plaintiffs' interrogatories and to serve complete responses to Plaintiffs' requests for document production. (Dkt. 41). It also held that Plaintiffs were entitled to recover the reasonable expenses they incurred in bringing the successful portions of their motion, ordering Plaintiffs to submit additional documentation as to those expenses. (*See id.* at 13-17). On April 9, 2025, Plaintiffs' counsel filed a declaration detailing the attorney's fees incurred. (Dkt. 42). Defendants responded to this submission, arguing that Plaintiffs should be awarded "significantly" less than the requested amount (Dkt. 43 at 5), and Plaintiffs replied (Dkt. 44).

On May 12, 2025, approximately a month after the Court's Decision and Order, Plaintiffs moved for sanctions under Federal Rule of Civil Procedure 37(b), arguing that Defendants had failed to serve interrogatory answers or produce documents as required by the Court. (Dkt. 47). The parties then briefed that motion. (*See* Dkt. 50; Dkt. 51; Dkt. 61).

For the reasons that follow, the Court awards Plaintiffs $2,590 in attorney's fees for litigating the successful portions of their motion to compel, and $1,085 for fees incurred in litigating the fee request. It grants in part and denies in part as moot Plaintiffs' motion for sanctions and awards Plaintiffs the reasonable attorney's fees and expenses incurred in moving for sanctions.

## **BACKGROUND**

The Court assumes familiarity with the factual and procedural background of

this matter and recounts such background only as necessary to understand the Court's reasoning here.

## I.  **Factual Background**

Mr. Wright is the "author of numerous fish illustrations," which he "licenses . . . exclusively through JQ Licensing."[2] (Dkt. 33 at ¶¶ 2, 4). In 1993 and 2000, Mr. Wright authored two illustrations depicting salmon ("Salmon Trolling" and "Legends Salmon") and registered both illustrations with the United States Copyright Office. (*Id.* at ¶¶ 14-17).

According to Plaintiffs, RSF and DEKit are "a charter fishing company" and a company "in the business of outfitting fishing boats with decking/protective material," respectively. (*Id.* at ¶¶ 30, 76). The two individual defendants named in this suit—Mr. Mammano and Mr. White—are "the joint owners, operators, managers, officers, etc., for both RSF and . . . DEKit". (*Id.* at ¶ 9). Plaintiffs allege that Defendants used Mr. Wright's salmon illustrations to market their businesses in violation of Plaintiffs' copyrights. (*Id.* at ¶¶ 31, 33, 77). More specifically, Plaintiffs say that Defendants used Mr. Wright's illustrations on: an RSF boat; on other RSF promotional materials including "water cooler [stickers], clothing, and [automobile] decals"; and on a piece of "decking/protective material" produced by DEKit. (*Id.*)

---

[2]    The complaint and amended complaint identify Wright as an illustrator, or, more specifically, as the "author of . . . fish illustrations." (Dkt. 1 at ¶ 2; Dkt. 33 at ¶ 2). Nonetheless, Defendants have repeatedly referred to him as a "photographer" (*see, e.g.*, Dkt. 29 at 2; Dkt. 43 at 4; Dkt. 50 at 2), even after Plaintiffs pointed out the error (Dkt. 44 at 9).

Plaintiffs say that they first learned of Defendants' use of Mr. Wright's illustrations in March 2024 and sent Defendants letters "demand[ing] that they cease and desist . . . their infringing conduct." (*Id.* at ¶¶ 54, 97). Defendants did not do so (*id.* at ¶¶ 55-58, 98-99), and so on April 23, 2024, Plaintiffs commenced this action (Dkt. 1), later filing an amended complaint (Dkt. 33), the operative pleading in this action.

## II.    <u>Procedural Background</u>

This matter has been referred to the undersigned for all non-dispositive pretrial proceedings. (*See* Dkt. 20; Dkt. 40).

On August 8, 2024, Plaintiffs served RSF and DEKit with interrogatories and requests for production ("RFPs"). (Dkt. 26-3; Dkt. 26-4; Dkt. 26-5; Dkt. 26-6). Two months later, on October 8, 2024, Plaintiffs moved to compel RSF and DEKit to respond to those interrogatories and RFPs (Dkt. 26), arguing that "Defendants ha[d] completely failed to serve any genuine discovery in response" to Plaintiffs' requests. (Dkt. 26-1 at 5).

In a Decision and Order issued on April 7, 2025 (the "April 7 Decision and Order"), the Court granted in part and denied in part that motion. (Dkt. 41). As an initial matter, the Court noted that Defendants had not complied with Local Rule of Civil Procedure 7(a)(3), which requires that "motions and opposition to motions shall be supported by at least one . . . affidavit, declaration or affirmation, and by such other evidence . . . as appropriate to resolve the particular motion." (*Id.* at 5-6 (quoting Loc. R. Civ. P. 7(a)(3))).

Notwithstanding that failure, the Court exercised its discretion to overlook the rule violation and consider the parties' dispute on the merits. (*Id.* at 6). It determined that Defendants had failed to (1) provide properly verified interrogatory responses, as required by Federal Rule of Civil Procedure 33, and (2) produce all documents responsive to Plaintiffs' RFPs as required by Federal Rule of Civil Procedure 34. (*Id.* at 6-8, 10-11). At the same time, the Court denied Plaintiff's request that the Court (1) require Defendants to verify under oath their representations that all responsive documents as to some RFPs already had been produced, and (2) deem that Defendants had waived any future objections to the RFPs. (*Id.* at 11-13).

The Court ordered Defendants to provide properly verified interrogatories and produce all responsive documents to Plaintiffs within 30 days of its Decision and Order—that is, by May 7, 2025. (*Id.* at 16-17). And because Plaintiffs' motion to compel had been partially successful, the Court held that they were entitled to recover the "reasonable expenses [they] incurred in making th[e] motion [under] Rule 37(a)(5)(A)." (*Id.* at 16). Plaintiffs were ordered to "submit a sworn affidavit detailing the reasonable expenses, including attorney's fees, they incurred in litigating the portion of th[e] motion [to compel] that the Court ha[d] granted" along with "any documentation demonstrating their expenditures" by May 7, 2025. (*Id.* at 17). Defendants were permitted to respond to Plaintiff's affidavit within 14 days of its filing and Plaintiffs were permitted to reply within 7 days of that response. (*Id.*).

On April 9, 2025, Plaintiffs filed a declaration and supporting documentation that asked the Court to award $2,590 in attorney's fees for litigating the granted

portions of the motion and $315 for preparing the fee application (Dkt. 42 at ¶¶ 7-9; Dkt 42-1). Defendants opposed that request, asking the Court to "significantly reduce the monetary amount requested by Plaintiffs." (Dkt. 43 at 5). Plaintiffs then replied, arguing that "Defendants' objections [to the fee amount] lack[ed] merit" and asking the Court to award an additional $770 in attorney's fees for the time their counsel had spent "defending the fee application," so that they sought a total of $3,675 in attorney's fees, including $1,085 for the fee application. (Dkt. 44 at 1, 10; *see* Dkt. 44-1; Dkt. 44-2).

On May 7, 2025, RSF served revised interrogatory responses. (Dkt. 47-2 at ¶ 7; *see* Dkt. 47-5). The same day, Defendants emailed Plaintiffs' counsel four years of RSF's tax returns. (Dkt. 47-3; *see* Dkt. 47-1 at 2, 7; *see also* Dkt. 50 at 4; Dkt. 51-1 at ¶¶ 9-13). Two days later, Defendants emailed some of Mr. White's tax records related to DEKit, although these records were missing pages. (Dkt. 47-2 at ¶¶ 4-6; Dkt. 47-4). Plaintiffs were not satisfied by these productions, and on May 12, 2025—five days after the deadline set by the Court for Defendants' discovery responses—Plaintiffs moved for sanctions pursuant to Rule 37(b) based on "Defendants' continuing failure to comply with this Court's April 7 . . . Decision and Order. (Dkt. 47; Dkt. 47-1 at 1).

Plaintiffs contend that RSF's interrogatory responses remain "[im]properly verified" and that Defendants have failed to provide all responsive documents to their RFPs as required by the April 7 Decision and Order. (*See* Dkt. 47-1 at 6-12). Accordingly, they ask the Court to "strik[e] RSF's interrogatory responses," preclude Defendants from using certain unproduced evidence, and order any necessary

additional relief to "remedy the prejudice Plaintiffs have suffered and to deter continued disregard of the Federal Rules and this Court's prior orders," such as requiring the drawing of "adverse inferences." (*Id.* at 11-13). More specifically, in their reply in support of their sanctions motions, Plaintiffs seek "dual relief" in the form of "preclusion and a revenue presumption" as both "necessary and proportional to cure the prejudice to Plaintiffs." (Dkt. 51 at 8). Plaintiffs also ask the Court to award them the "reasonable attorneys' fees and expenses" that they incurred in "filing and litigating" the sanctions motion. (Dkt. 47-1 at 12).

On May 19, 2025, Defendants responded, arguing that in the days since the sanctions motion had been filed, they had served additional materials—specifically, revised interrogatory answers, additional documents, and revised responses to Plaintiffs' RFPs—that rendered much of the motion moot. (Dkt. 50 at 2). Defendants further argue that "sanctions are not warranted for a variety of reasons, including that [Plaintiffs] did not seek to meet and confer with Defendants' counsel prior to filing the" sanctions motion. (*Id.*).

On May 23, 2025, Plaintiffs replied, arguing that their motion is not moot and reiterating that sanctions are warranted. (Dkt. 51). And on October 2, 2025, Plaintiffs filed a supplemental brief in support of their motion for sanctions, asserting that "newly discovered evidence confirm[ed] that Defendants' discovery responses and counsel's representations were false and that the sanctions already sought remain[ed] warranted." (Dkt. 61 at 1).

The Court now resolves Plaintiffs' fee application and sanctions motion.[3]

## DISCUSSION

### I.    Scope of Magistrate Judge's Authority

A magistrate judge may hear and issue a decision on pretrial matters "not dispositive of a party's claim or defense" subject to district judge review on a "clearly erroneous" or "contrary to law" standard. Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). "Matters concerning discovery generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). More specifically, as relevant here, decisions on motions to compel and related requests for attorney's fees are nondispositive. *See Averbach v. Cairo Amman Bank*, No. 1:19-CV-4-GHW-KHP, 2025 WL 1725148, at *3 (S.D.N.Y. June 18, 2025) ("A magistrate judge's ruling on a motion to compel discovery is nondispositive." (quoting *United States ex rel. Integra Med Analytics LLC v. Laufer*, No. 17-cv-9424 (CS) (JCM), 2023 WL 4200865, at *1 (S.D.N.Y. June 27, 2023))); *Xerox Corp. v. Conduit Glob., Inc.*, No. 6:21-CV-06467 EAW, 2025 WL 586244, at *1 (W.D.N.Y. Feb. 24, 2025) (stating that magistrate judge's decision on motions for attorney's fees in connection with motions to compel and for protective order was nondispositive).

The analysis is slightly more complicated when it comes to motions for Rule 37(b) sanctions. Generally, "magistrate judges ha[ve] the power to impose a sanction for discovery violations under Rule 37 of the Federal Rules of Civil Procedure" if "the

---

[3]    On July 16, 2025, Plaintiffs moved for summary judgment. (Dkt. 52). That motion is currently pending before the presiding District Judge.

particular sanction d[oes] not determine a claim." *Kiobel v. Millson*, 592 F.3d 78, 95

(2d Cir. 2010) (Leval, J., concurring) (citing *Thomas E. Hoar, Inc.*, 900 F.2d at 525);

*see also R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 16 n.1 (S.D.N.Y. 2010) ("[T]he Second

Circuit has established that a magistrate judge may decide a motion for sanctions for

discovery violations under the Federal Rules of Civil Procedure by memorandum and

order, rather than by report and recommendation, at least insofar as the magistrate

judge's order does not impose terminating sanctions."), *adopted*, 271 F.R.D. 55

(S.D.N.Y. 2010). "The critical [question] is what sanction the magistrate judge

actually imposes, not what sanction the moving party seeks." *Cates v. Trs. of

Columbia Univ. in City of N.Y.*, 330 F.R.D. 369, 372 (S.D.N.Y. 2019) (quotation

omitted); *see also Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328

F.R.D. 100, 118 (S.D.N.Y. 2018) (same).

　　As explained below, the Court finds that the appropriate sanctions in this case

are limited to precluding certain evidence, requiring certain presumptions with

respect to the calculation of damages, and awarding attorney's fees—none of which

"determine a claim." *See Kiobel*, 592 F.3d at 95 (Leval, J., concurring); *Seena Int'l,

Inc. v. One Step Up, Ltd.*, No. 15CV01095PKCBCM, 2016 WL 2865350, at *10

(S.D.N.Y. May 11, 2016) (explaining that "[o]rders barring the introduction of certain

evidence may . . . be properly characterized as non-dispositive" even if, "[a]s a

practical matter, such an order may bar a party from pursuing certain theories of

liability or seeking certain items of damage"); *DeCastro v. Kavadia*, 309 F.R.D. 167,

168-69, 169 n.2 (S.D.N.Y. 2015) (stating that decisions imposing "sanctions for

discovery violations are deemed nondispositive unless the sanction employed disposes of a claim" and deeming adverse inference sanction imposed by magistrate judge nondispositive); *Park v. Kim*, No. 20 CV 2636 (PKC)(LB), 2024 WL 5643192, at *1 n.2 (E.D.N.Y. May 1, 2024) ("As an award of attorney's fees as a discovery sanction under Rule 37 is nondispositive, defendant's motion is properly decided by a magistrate judge.").

The Court's resolution of the fee request and sanctions motion therefore is set forth in a Decision and Order.

## II. <u>Fee Award for Motion to Compel</u>

### A. **Legal Standard**

"When a motion to compel is granted or disclosure of discovery is made after the motion to compel is filed, the Court 'must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.'" *Bravia Cap. Partners, Inc. v. Fike*, 296 F.R.D. 136, 143 (S.D.N.Y. 2013) (alterations in original) (quoting Fed. R. Civ. P. 37(a)(5)(A)). "[T]he fee applicant must 'submit appropriate documentation to meet the burden of establishing entitlement to an award.'" *McPhaul v. Insight Mgmt. Partners*, No. 1:19-CV-1392, 2022 WL 542534, at *3 (W.D.N.Y. Feb. 23, 2022) (some internal quotation marks omitted) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

To calculate the reasonable attorney's fees that should be awarded, courts must first determine the "lodestar" or "presumptively reasonable fee," which is "the

product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). "There is a 'strong presumption' that the lodestar figure is reasonable, but that . . . presumption 'may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Ceglia v. Zuckerberg*, No. 10-CV-00569A F, 2012 WL 503810, at *4 n.6 (W.D.N.Y. Feb. 14, 2012) (quoting *Perdue v. Kenny A.,* 559 U.S. 542, 554 (2010)); *see Equal Emp. Opportunity Comm'n v. Green Lantern Inn, Inc.*, No. 19-CV-06704-FPG-MJP, 2022 WL 1467820, at *5 (W.D.N.Y. May 10, 2022).

In awarding attorney's fees, the Court must also determine who is to pay. Rule 37(a)(5) provides that an award for attorney's fees based on a successful motion to compel shall be paid by "the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both." Fed. R. Civ. P. 37(a)(5)(A); *see AAIpharma Inc. v. Kremers Urb. Dev. Co.*, No. 02 CIV.9628 BSJ RLE, 2006 WL 3096026, at *6 (S.D.N.Y. Oct. 31, 2006) ("Under [Rule] 37(a), the Court can hold either the party or its counsel, or both, liable.").

"Whether to hold the offending party, its legal counsel or both for payment of monetary sanctions under Rule 37(a) is a decision with[in] the court's discretion." *Mills v. Steuben Foods, Inc.*, No. 19-CV-1178WMS(F), 2023 WL 6825265, at *3 (W.D.N.Y. Oct. 17, 2023). Courts have held that "[j]oint and several sanctions against parties and their attorneys 'are available when the court finds both to be equally at fault.'" *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No.

16CV1318GBDBCM, 2017 WL 3671036, at *20 (S.D.N.Y. July 18, 2017) (quoting *Hunt v. Enzo Biochem, Inc.*, 2011 WL 4840713, at *7 (S.D.N.Y. Oct. 12, 2011)), *adopted*, No. 16CIV1318GBDBCM, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017). And when "the relative culpability of counsel and client for perpetrating discovery abuses is not clear, courts do not hesitate to hold both equally liable for the attorney's fees awarded." *New York v. Grand River Enters. Six Nations, Ltd.*, No. 14-CV-910A(F), 2021 WL 4958653, at *6 (W.D.N.Y. Oct. 26, 2021); *see Mills*, 2023 WL 6825265, at *3 (noting that because Plaintiff and Plaintiff's counsel had "once again failed to provide any information regarding the allocation of responsibility for the need for Defendants' motion as required by Rule 37(a)(5)(A)," the attorney's fees awarded "should . . . be split equally between Plaintiff and Plaintiff's counsel").

## B. Reasonable Fee Calculation

As noted above, Plaintiffs seek $2,590 in attorney's fees for litigating the successful portions of their motion to compel (Dkt. 42 at ¶ 7) and $1,085 in attorney's fees "for preparing and defending the fee application" (Dkt. 44 at 9-10; Dkt. 44-1 at ¶¶ 2, 3)—thus seeking $3,675 attorney's fees in total (Dkt. 44-1 at ¶ 3). Plaintiffs' counsel, Dmitry Lapin ("Mr. Lapin"), submitted declarations and time entries in support of these requests. (Dkt. 42; Dkt. 42-1; Dkt. 44-1; Dkt. 44-2).

According to those declarations, Mr. Lapin is a "Senior Litigation Counsel for . . . a boutique firm specializing in the enforcement and protection of intellectual property rights" with "over a decade [of experience] as a practicing attorney" and specific "expertise . . . in the field of copyright litigation." Dkt. 42 at ¶ 2. Mr. Lapin

seeks a rate of $350/hour for his work in this litigation. (Docket 42 at ¶¶ 3, 6). He says that he spent 7.8 hours on "the portions of the [m]otion [to compel] for which the Court granted relief," providing a breakdown of how he spent those hours. (*Id.* at ¶¶ 4-7). But because he asks to recover for only 50% of one 0.8-hour block of his time in which he worked on arguments that were only partially successful (*id.* at ¶ 6), the Court understands him to seek compensation for just 7.4 hours of work in connection with the successful portions of the motion to compel.[4] Mr. Lapin further attests that he spent another 3.2 hours preparing filings in support of the attorney's fee request. (Dkt. 42 at ¶ 8; Dkt. 44-1 at ¶¶ 2-3).

Defendants argue that the attorney's fees awarded to Plaintiffs should be significantly lower than those sought. (Dkt. 43 at 2). More specifically, Defendants say that (1) the hourly rate sought by Plaintiffs is unreasonably high (*id.* at 2-3), (2) the number of hours that Plaintiffs seek compensation for is too many (*id.* at 3-4), and (3) Plaintiffs should not be able to recover attorney's fees for counsel's work in litigating the fee request (*id.* at 4).[5] The Court rejects each of those arguments.

### 1. Reasonable Hourly Rate

Defendants first argue that the requested $350 hourly rate is "fairly high for this District and these circumstances" and should be reduced to "$300.00 or less."

---

[4]    The Court's way of calculating the fee is more in keeping with the lodestar method described above, but the distinction is essentially one without a difference— both the Court's and Mr. Lapin's methods of apportioning and calculating what would be a reasonable attorney's fee here arrive at the same result.

[5]    Defendants also argue that the circumstances that led to their delays were "fairly benign" and that "Defendants have limited resources available for the defense

(Dkt. 43 at 2). Defendants contend that the motion to compel at issue here was a "non-specialized motion" and point to another case in this District in which the court reduced Mr. Lapin's requested hourly rate from $325 to $300. (*Id.* at 2-3 (citing *Wright v. Ruppert*, No. 1: 23-CV-00823-JLS-HKS, Dkt. 21 at 6-7 (W.D.N.Y. Jan. 11, 2024))).[6]

To arrive at the reasonable hourly rate for calculation of the lodestar, courts look to "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Off. of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011) (some internal quotation marks omitted) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). The inquiry is usually specific to one's location. That is, "[t]h[e Second] Circuit's 'forum rule' generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Id.* at 290 (quoting *Simmons*, 575 F.3d at 174).

---

of this action for which there is no available insurance coverage." (Dkt. 43 at 4). But this Court has already determined that Plaintiffs should be awarded attorney's fees under Rule 37(a)(5)(A) (Dkt. 41 at 13-16), and it sees no reason to revisit that ruling here. Further, while the Court is not insensitive to Defendants' statements about their financial situation, "that the award of fees will have an adverse economic effect on the party required to pay them does not make the award 'unjust.'" *Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-cv-10256 (GHW), 2021 WL 2650371, at *5 (S.D.N.Y. June 28, 2021).

[6]    Defendants' response cites Dkt. 24, but the language Defendants refer to from the *Wright v. Ruppert* litigation comes from the court's order at Dkt. 21.

Having carefully considered the parties' arguments, the Court concludes that a $350 hourly rate is appropriate here. First, such a rate is not beyond the range of what has been approved in other cases in this District. *See, e.g.*, *Howard v. City of Rochester*, 780 F. Supp. 3d 423, 433 (W.D.N.Y. Apr. 30, 2025) (awarding $475 hourly rate to lead counsel in 42 U.S.C. § 1983 case and noting that "recent decisions of this District have awarded $350 per hour to experienced civil rights litigators"); *Ryan v. Town of Tonawanda*, No. 23-CV-351-LJV(F), 2025 WL 997362, at *2 (W.D.N.Y. Apr. 1, 2025) (holding that $350 hourly rate was "reasonable" in light of "some inflation effect" and "Plaintiff's counsel's extensive litigation experience"); *Xerox Corp. v. Conduit Glob., Inc.*, No. 21-CV-6467-EAW-MJP, 2024 WL 3548411, at *15 (W.D.N.Y. July 26, 2024) (determining $560 hourly rate reasonable for counsel with "*far* more than 20 years of experience" in "complex commercial [case]"), *aff'd*, 2025 WL 586244. In addition, as Plaintiffs argue, even if this Court was bound by the determination of another judge in a different case that an hourly rate of only $300 was appropriate for Mr. Lapin in January 2024, "counsel's additional experience, continued specialization, and the rising costs of practice, including inflation" would render an increased rate of $350 appropriate here. (Dkt. 44 at 4).

### 2.    Reasonable Number of Hours

Defendants next contend that the number of hours that Plaintiffs' counsel spent litigating the motion to compel—including the successful portions—is too high and should be reduced. (Dkt. 43 at 3-4). "Though . . . mindful that motion practice can often be time consuming," they argue that "9.6 hours is an amount of time usually

more associated with more complex motions and/or motions regarding a much greater scope of discovery." (*Id.* at 3).

To determine the reasonable number of hours for purposes of a fee request, "the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Kmonicek v. ASAP Restoration Inc.*, No. 24-CV-5226 (EK)(SIL), 2025 WL 1384709, at *7 (E.D.N.Y. Apr. 3, 2025) (quoting *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005)), *adopted*, No. 24-CV-5226 (EK)(SIL), 2025 WL 1384248 (E.D.N.Y. May 12, 2025). "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Id.* (alteration in original) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).

Defendants do not cite any case law in support of their argument that Plaintiffs' counsel spent an excessive amount of time on the motion to compel, nor do they raise specific issues with the amount of time that Plaintiffs' counsel allocated to any given task. As such, the Court finds that their vague assertions that the time allocated was simply too much do not overcome Mr. Lapin's more detailed account of his time. (*See* Dkt. 42 at ¶¶ 4-7; Dkt. 42-1). The Court therefore finds that the 7.4 hours that Plaintiffs' counsel spent litigating the successful portions of the motion to compel to be reasonable. *See Pariseau v. Killington/Pico Ski Resort Partners, LLC*, No. 2:23-CV-00043, 2025 WL 1736146, at *6 (D. Vt. June 23, 2025) (finding that two

attorneys could recover for 16 hours of "objectively reasonable time" spent litigating successful motion to compel).

Thus, because both the hourly rate ($350) and the hours spent (7.4) are reasonable, the Court awards Plaintiffs $2,590 in attorney's fees for litigating the successful portions of their motion to compel.

### 3.    Post-Motion Fee Request Costs

Last, Defendants assert that the Court should not award attorney's fees to Plaintiffs for the time their counsel spent in making and supporting the fee request. (Dkt. 43 at 4).

 "[A] party that has been awarded attorneys' fees is generally entitled to recover the reasonable cost of making a fee application." *Mawere v. Citco Fund Servs., (USA) Inc.*, No. 09 CIV. 1342 BSJ DF, 2011 WL 6779319, at *7 (S.D.N.Y. Sept. 16, 2011), *adopted*, No. 09 CIV. 1342 BSJ DF, 2011 WL 6780909 (S.D.N.Y. Dec. 27, 2011); *see also Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1183 (2d Cir. 1996) (noting that "attorneys' fees for the preparation of the fee application are compensable"). Courts determine whether and how much to award in "fees on fees" on a discretionary, case-by-case basis. *See Best Payphones, Inc. v. Dobrin*, No. 01-CV-3934, 2017 WL 11456613, at *4 (E.D.N.Y. June 27, 2017). Specifically, the Court may "deny or substantially reduce requested fees on fees, where, in the Court's view, the amount requested is excessive." *Mawere*, 2011 WL 6779319, at *7 (quotation omitted).

Here, for many of the reasons already stated, the Court finds that both the hourly rate sought ($350) and the hours spent (3.2 hours) in connection with the fee

request are reasonable. The Court therefore awards $1,085 in attorney's fees based on the post-motion preparation of the fee declaration and reply in support of that declaration.

### 4.   Liability for Attorney's Fees

Finally, the Court considers who must pay these fees. The record before the Court does not clearly show whose conduct was responsible for the failure to timely supply the discovery at issue, and Defendants did not address this question in their response to Plaintiffs' fee application. In the absence of any such information, the Court is inclined to hold that Defendants and their counsel are equally liable for the resultant attorney's fees, such that the total should be split between them. *See Grand River Enters. Six Nations*, 2021 WL 4958653, at *6; *see Mills*, 2023 WL 6825265, at *3.

This Court is aware, however, that it neither explicitly stated that Defendants' counsel could be held liable for attorney's fees here nor did it specifically order Defendants to address this issue. (*See* Dkt. 41). For that reason, Defendants and/or their counsel may address the issue of how payment of the fees should be allocated among themselves **within 30 days of the date of this Decision and Order**. If Defendants and their counsel do not address this issue, the Court will order that the payment be split equally between Defendants and their counsel.[7]

---

[7]   Because there are multiple Defendants, each Defendant shall be joint and severally liable for Defendants' half.

III. **Motion for Sanctions**

As noted above, Plaintiffs have moved for sanctions against Defendants based on the latter's purported failure to serve properly verified interrogatory responses and to produce documents responsive to Plaintiffs' RFPs as required by the Court's April 7 Decision and Order.[8] (Dkt. 47-1 at 1, 6-12). Plaintiffs ask the Court to (1) "strik[e] [the improperly verified] interrogatory responses," (2) preclude Defendants from introducing unproduced material while ordering certain presumptions based on material that has been produced, and (3) award Plaintiffs the reasonable attorney's fees and expenses incurred in litigating the sanctions motion. (Dkt. 47-1 at 12-13; Dkt. 51 at 8). The Court considers each sanction request below.

A. **Legal Standard**

Federal Rule of Civil Procedure 37(b) empowers a court to issue "just orders" to sanction a party for failing to comply with a discovery order. Fed. R. Civ. P.

---

[8]    In its April 7, 2025 Decision and Order, the Court explained that Local Rule of Civil Procedure 7(a)(3) provides—with limited exceptions not applicable here—that "motions and *opposition to motions* shall be supported by at least one (1) affidavit, declaration or affirmation, and by such other evidence . . . as appropriate to resolve the particular motion." (Dkt. 41 at 5-6 (alteration in original) (emphasis added) (quoting Loc. R. Civ. P. 7(a)(3))). It further held that that Defendants' failure to accompany their opposition to Plaintiffs' Motion to Compel violated the Local Rules and—while it would nonetheless consider the opposition on its merits—"the Court w[ould] not be inclined to overlook any future failures to comply with the Local Rules." (*Id.* at 6).

Despite the Court's clear warning, Defendants' response to Plaintiffs' motion for sanctions is unaccompanied by any affidavit, declaration, or affirmation, again violating Local Rule 7(a)(3). The Court would be fully justified in declining to consider Defendants' response at all based on this failure. Nonetheless, given the significance of the matters at issue, the Court will overlook this failure in its discretion. No such leniency will be afforded for future violations of Local Rule 7(a)(3).

37(b)(2)(A); *see Friends of Animals Inc. v. U.S. Surgical Corp.*, 131 F.3d 332, 334 (2d Cir. 1997). Such orders may impose sanctions such as "directing that [certain] designated facts be taken as established for purposes of the action, as the prevailing party claims," "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," or "striking pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(i)-(iii). The Second Circuit has explained that "sanctions under Rule 37 are intended to serve three purposes":

> First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010) (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)).

"In imposing Rule 37 sanctions, . . . courts properly consider various factors, including '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance.'" *Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017) (alteration omitted) (quoting *S. New Eng. Tel. Co.*, 624 F.3d at 144). These factors, however, "'are not exclusive, and they need not each be resolved against' the sanctioned party for sanctions to be appropriate." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 360 (S.D.N.Y. 2023) (quoting

*S. New Eng. Tel. Co.*, 624 F.3d at 144). "[A] district court has wide discretion in sanctioning a party for discovery abuses*." Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999).

### B.   Failure to Provide Properly Verified Interrogatory Responses

In its April 7 Decision and Order, the Court held that neither RSF nor DEKit had submitted properly verified interrogatory responses. (Dkt. 41 at 8). Instead, their responses were "merely signed with Mr. Mammano's electronic signature" not "under oath" as required by Federal Rule of Civil Procedure 33. (*Id.*). The Court therefore ordered Defendants to remedy this failure by serving properly verified interrogatory responses by May 7, 2025. (*Id.* at 16).

Plaintiffs assert that RSF has not complied with this order because the revised interrogatory answers that it served on May 7, 2025,[9] included a "purported verification" signed by "Rochester Sportfishing, LLC," a "legally nonexistent or misidentified entity." (Dkt. 47-1 at 4 (bold and underlining omitted); *see* Dkt. 47-5 at 7). The proper defendant in this action, they point out, is RSF, a corporation, and the responses should have been verified by RSF's true name Rochester Sportfishing, *Inc.*" (Dkt. 47-1 at 4) (emphasis added). Plaintiffs argue that "[t]he distinction between 'LLC' and 'Inc.' is not trivial," noting that the terms refer to "different corporate structures, governance, and responsibilities." (*Id.*). They further contend that "[a] verification on behalf of the wrong entity, who is not a party to the action, offers no

---

[9]   The revised interrogatory answers are dated on May 6, 2025 (Dkt. 47-5 at 7), but were served the following day, on May 7, 2025 (Dkt. 47-2 at ¶ 7).

assurance that the party has verified the responses." (*Id.*). Accordingly, Plaintiffs ask the Court to "strik[e] RSF's interrogatory responses." (*Id.* at 12).

RSF does not contest that its May 7, 2025 interrogatory responses were signed with an incorrect name. (*See* Dkt. 50 at 3). But Defendants argue that Plaintiffs' counsel did not attempt to "meet and confer" with their own counsel before moving for sanctions, which they assert "is enough to deny the . . . motion." (*Id.* at 6). They further contend that the reference to "Rochester Sportfishing, LLC," was a mere "typographical error"—not a "willful" or "deliberate" attempt to disobey the Court's order. (*Id.* at 3 (emphasis omitted)). And in any event, Defendants argue, RSF served revised interrogatory responses with RSF's correct signature on May 12, 2025—just three days after the sanctions motions—rendering the issue moot. (*Id.* at 2-3).

Plaintiffs counter that RSF's incorrect verification was neither a "mere typographical error" nor "an isolated mistake." (Dkt. 51 at 6 (quotation omitted)). They note that RSF included the same incorrect signature in its October 23, 2024 interrogatory responses, and that Plaintiffs explicitly called attention to this error in their reply in support of the motion to compel. (*Id.*). Nonetheless, "[D]efendants did not serve a corrected verification [for RSF] until May 12[, 2025.]" (*Id.*). Moreover, because "Plaintiffs served the interrogatories in early August 2024, . . . it took Defendants approximately nine months to provide a compliant verification." (*Id.*) And Plaintiffs say this long delay "underscores Defendants' broader disregard for procedural obligations and supports the imposition of sanctions under Rule 37(b), even [though] the verification has now been corrected." (*Id.*).

As an initial matter, contrary to Defendants' assertion (Dkt. 50 at 6), Plaintiffs were not required to attempt to meet and confer before moving for sanctions here: "A party is not required to meet and confer or make a good faith certification when moving for sanctions for failure to comply with a prior [o]rder which already granted a motion to compel."[10] *Amatangelo v. Nat'l Grid USA Serv. Co.*, No. 04-CV-246S(F), 2007 WL 4560666, at *6 (W.D.N.Y. Dec. 18, 2007*)* (collecting cases); *see* Fed. R. Civ. P. 37(b) (making no reference to meet and confer requirement in providing for sanctions based on failure to comply with court discovery order). Further, the Court agrees with Plaintiffs that RSF's apparent misstatement of its own name in its verification is a fairly egregious error, and the mistake is all the more inexplicable because it was made after Plaintiffs raised the issue in their briefing.

Nonetheless, the Court agrees with Defendants that Plaintiffs' requested sanctions would not be appropriate here. Plaintiffs ask the Court to strike RSF's May 7, 2025 interrogatory responses based on the incorrect verification, yet as Plaintiffs have acknowledged (Dkt. 51 at 6), RSF has now served revised interrogatory responses correcting that issue. So Plaintiff's request to strike that earlier and improper set of responses is moot, because those responses already have been

---

[10]    In arguing the contrary, Defendants rely on *D'Angelo v. City of Lockport*, No. 1:19-CV-00221 LJV MJR, 2021 WL 5111987, at *2 (W.D.N.Y. Nov. 3, 2021). (Dkt. 50 at 6). But that case—as Defendants in fact state (*see id.*)—involved a motion for attorney's fees under Federal Rule of Civil Procedure 37(a)(5)(A) based on a successful motion to compel. *See D'Angelo*, 2021 WL 5111987, at *2. And as explained, Plaintiffs have moved for sanctions under Rule 37(b) based on noncompliance with a court order, and so the applicable standard is different and involves the four factors described above. *See Funk*, 861 at 366.

- 23 -

superseded by responses with a proper verification. *See S.P.S. by & through Snyder v. Instant Brands, Inc.*, No. 4:19-CV-212 (CDL), 2021 WL 1989933, at *2 (M.D. Ga. May 18, 2021) ("declin[ing] to strike [defendant's] now-verified interrogatory responses," which were filed three weeks after plaintiff moved to strike the unverified version).

But the fact that the request to strike RSF's answers is now moot does not, in itself, mean that some other sanction is not warranted. *See id.* at *2, *4 (imposing sanctions for defendant's long and unjustified delay in verifying interrogatory responses). The Court therefore has weighed the factors delineated above and the circumstances of this case. More specifically, it has considered, on the one hand, the fact that Defendants, due only to their own carelessness, failed to remedy the deficiency they were on notice of before the deadline, and on the other, Defendants' hasty, if belated, correction of that error, and the limited prejudice that Plaintiffs suffered as result. The Court concludes that awarding Plaintiffs the reasonable attorney's fees incurred in bringing the motion for sanctions—as it does below, *see infra*—is a sufficient but no greater than necessary sanction for Defendants' conduct in filing the erroneously signed interrogatory response. *See S.P.S.*, 2021 WL 1989933, at *2, *4 (ordering defendant to pay attorney's fees incurred by plaintiff in moving to strike unverified interrogatory answers as sanction for delayed filing); *see also Worldcom Network Servs., Inc. v. Metro Access, Inc.*, 205 F.R.D. 136, 143 (S.D.N.Y. 2002) (stating that court would "impose the minimum sanction contemplated by Rule 37 in cases where there has been a failure to comply with a court-ordered discovery

obligation: requiring [noncompliant party] to pay [moving party] the costs of bringing its motion" where party only complied with discovery order after sanctions motion).

Plaintiffs' motion for sanctions therefore is denied to the extent it asks the Court to strike RSF's May 7, 2025 interrogatory responses.[11]

### C.   Failure to Produce Responsive Documents

Plaintiffs also seek sanctions for Defendants' inadequate responses to Plaintiffs' RFPs. In moving for sanctions on May 12, 2025, Plaintiffs argued that Defendants had failed to "produce documents responsive to Plaintiffs' requests for production, to the extent such documents have not already been produced," as required by this Court's April 7 Decision and Order (Dkt. 47-1 at 6 (quoting Dkt. 41 at 16)). Specifically, Plaintiffs represented that RSF "ha[d] . . . produced [only] a small subset of [the] financial records requested—four years of tax returns—but ha[d] issued no written responses whatsoever to the remaining [RFPs]" and thus had not "explained whether other responsive documents exist[ed] or whether any documents were withheld." (*Id.* at 7) Likewise, DEKit "did not produce any portion of its responsive tax returns until May 9, 2025," when Defendants' counsel "informally transmitted, via email, a partial production of individual tax documents for Defendant . . . White." (*Id.* at 7-8). But those documents "were incomplete," omitting pages containing "critical information directly relevant to damages" and DEKit also failed to provide any written RFP responses. (*Id.* at 8.)

---

[11]   The request for attorney's fees is addressed more fully below.

Defendants assert that in the days after Plaintiffs' sanctions motion, they remedied many of these issues. (*See* Dkt. 50 at 3-5). First, they note that "on May 12, 2025, [Mr. White's] complete personal tax returns . . . were e-mailed to Plaintiffs' counsel," and that the records sent on May 9, 2025, were incomplete only because "Mr. White was awaiting [the complete] files from his accountant." (*Id.* at 3). Second, they represent that on May 14, 2025, they served Second Revised Responses to Plaintiffs' RFPs "to confirm that everything available ha[d] been produced." (*Id.* at 5). According to Defendants, many of the documents that Plaintiffs complain are missing, such as documents regarding "the creation of the artwork" at issue or "communications concerning Plaintiffs or the subject works," either have already been turned over or simply do not exist. (*Id.* at 4). And while Defendants tacitly acknowledge that they have not turned over profit and loss statements requested by Plaintiffs, they nonetheless insist that they turned over "documents that were better and more detailed, namely four years of full [f]ederal tax returns for [RSF]."[12] (*Id.* (underlining omitted)).

Plaintiffs counter that Defendants have not mooted the sanctions motion by partially complying with their discovery obligations several days after the Court's

---

[12]    Defendants also argue that Plaintiffs' motion should be denied based on their failure to meet and confer before seeking sanctions and because Defendants' noncompliance was "substantially justified" in light of their "good faith effort to produce corporate and personal tax returns." (Dkt. 50 at 6). But as explained above, there is no such meet and confer requirement for Rule 37(b) sanction motions. *See Amatangelo*, 2007 WL 4560666, at *6. Further, as Plaintiffs suggest, Defendants have not produced anything more than their own say-so to show a good faith effort to comply. (Dkt. 51 at 3). And in any event, for the reasons explained, the relevant factors weigh in favor of imposing sanctions here.

May 7 deadline. (Dkt. 51 at 1-3). On the contrary, Plaintiffs assert, Defendants'
conduct "confirms their reactive approach to compliance and disregard for discovery
deadlines" and this Court's April 7 Decision and Order. (*Id.* at 3).

Further, Plaintiffs argue that even after these belated productions, Defendants
have still failed to fully respond to the RFPs. (*Id.* at 1, 4). More specifically, according
to Plaintiffs, Defendants turned over only four years of RSF's tax returns despite the
fact that the company has existed since 2011 and has admitted to installing the
design at issue in this case in 2014. (*See id.* at 3-4). Moreover, Plaintiffs contend that
Defendants cannot evade the request to provide "profit and loss statements" merely
by asserting that tax records are "better and more detailed," which in any event is
not true. (*Id.* at 5). Third, Plaintiffs argue that although Defendants "identified
'advertising and promotional materials' and 'online materials,' as being in their
possession, custody, or control" in their initial disclosures, they have never produced
any such documents. (*Id.* at 5-6).

Most recently, on October 2, 2025, Plaintiffs filed a supplemental response
asserting that the day before, RSF and Mr. Mammano had posted a photograph
"showing a t-shirt bearing the infringing artwork" at issue in this case. (Dkt. 61 at 1).
This, Plaintiffs assert, "contradicts RSF's discovery response" that they had no
responsive material to RFP No. 1, which asked for "a true and correct specimen of all
designs, artwork, graphics, etc.[,] that contain the Subject Work and/or the

design/artwork/graphic within the Accused Materials."[13] (*Id.* at 1-2 (quoting Dkt. 51-2 at 6); *see* Dkt. 61-2; Dkt. 51-5 at 2).

Based on those failures, Plaintiffs ask the Court to "preclude Defendants from producing or relying on any documents not produced by the Court-ordered deadline of May 7, 2025" and to "[d]eem that the average gross revenue reflected in the four years of tax returns produced by RSF, [is] presumed to reflect RSF's gross revenue for each year in which responsive financial documents were not produced."[14] (Dkt. 51 at 10). After examining the four factors that govern considerations of Rule 37(b) sanctions, as well as the circumstances of this case, the Court agrees that those sanctions should be imposed here.

### 1. Willfulness

"Noncompliance with a court's discovery order is willful when the order is clear, the party understood the order, and the failure to comply is not due to factors beyond the party's control." *Ramgoolie v. Ramgoolie*, 333 F.R.D. 30, 35 (E.D.N.Y. Sept. 10, 2019); *see Maldonado v. Loxton Inc.*, No. 20-CV-5776 (LDH) (RLM), 2022 WL 18858967, at *4 (E.D.N.Y. June 9, 2022) (stating that "unexplained and repeated failure to respond to discovery requests, comply with court orders, and appear in a

---

[13]    In addition, Plaintiffs attached a "still image" that they "independently obtained" from a March 2024 "video news broadcast" that "depict[s] the same t-shirt displayed in the same location on RSF's boat." (Dkt. 61-1 at ¶ 5; Dkt. 61-3).

[14]    Plaintiffs also ask the Court to award them their reasonable attorney's fees and costs. (Dkt. 51 at 10). The Court addresses this request below.

scheduled hearing" constitutes willfulness (citation omitted)), *adopted* (Aug. 26, 2022).

Defendants' failure to comply with their discovery obligations and with this Court's April 7 Decision and Order is willful. First, Defendants failed to meet the May 7 deadline clearly set by the Court. In fact, they did not even provide compliant responses to Plaintiffs' RFPs—which had been served in August 2024—until a week after the May 7 deadline had expired. (*See* Dkt. 41 at 11; Dkt. 50 at 5; Dkt. 51-5). Second, and more significantly, RSF has—apparently to this day—failed to produce the tax returns requested by Plaintiffs' RFPs, which clearly asked for RSF's "federal tax returns for *all* years in which [RSF] was in existence." (Dkt. 51-2 at 7 (emphasis added)). Defendants have not explained this failure; instead, they simply insist— without further explanation—that they complied by providing four years of returns. (*See* Dkt. 50 at 4). Defendants similarly have not explained their failure to provide "profit and loss statements" for RSF or DEKit (*see* Dkt. 51-2 at 7, 15), other than to proclaim—again without further explanation—that the tax returns provided are "better and more detailed," (Dkt. 50 at 4 (underlining omitted)).

Defendants' conduct throughout the discovery process has been obstructive of the progress of this litigation.[15] Defendants' failure to fully respond to Plaintiffs'

---

[15]    The Court is bound—in the absence of clear evidence to the contrary—to take Defendants' counsel at his word that all relevant advertising, promotional, online materials have been produced and no materials with the allegedly infringing designs were within Defendants' custody or control. *See Greer v. Carlson*, No. 20 Civ. 5484 (LTS) (SDA), 2020 WL 7028922, at *3 (S.D.N.Y. Nov. 29, 2020). Indeed, while it seems likely that the Facebook posts submitted by Plaintiffs on October 2 are recent photographs, especially in light of the circumstances cited by Plaintiffs (Dkt. 61 at 2),

RFPs—even after being ordered to do so by this Court—is neither the result of a misunderstanding of this Court's clear order or due to factors beyond Defendants' control. It is willful.

### 2.    Efficacy of Lesser Sanctions

The Second Circuit has held that "the severity of sanction must be commensurate with the non-compliance." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007). "When failure to comply with a court order is 'due to willfulness, or bad faith, or is otherwise culpable,' severe sanctions . . . are justified." *Martiny v. Introcaso-Allison*, No. 17-CV-09559 (SN), 2019 WL 4593613, at *2 (S.D.N.Y. Sept. 23, 2019) (quoting *Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991)).

Here, Defendants have turned over only a limited portion of RSF's tax returns and no profit and loss statements. And as just discussed, they have provided the Court with no explanation for this failure. Accordingly, if Defendants were later able to introduce such evidence, that would be unfair to Plaintiffs and allow Defendants to engage in litigation by ambush. Indeed, Defendants' failure to turn over this

---

the fact is not beyond dispute. Moreover, even if Plaintiffs had not submitted the supplemental filing, the Court would have granted Plaintiffs the sanctions they requested with respect to their RFPs for the reasons already explained, and Plaintiffs did not request additional sanctions based on the "new evidence" they submitted. (*Id.* at 4-5).

Nonetheless, the Court is seriously troubled by the exhibits submitted by Plaintiffs in their supplemental filing (*see* Dkt. 61-2; Dkt. 61-3), and it puts Defendants on notice that should their statements in the revised RFP responses prove to be untrue, they may be subject to further sanctions.

information to Plaintiffs in discovery prejudices the latter's ability to prove damages in this case. Moreover, mere monetary sanctions would not be effective here. The Court previously awarded attorney's fees to Plaintiffs based on the motion to compel (Dkt. 41 at 13-16), and yet that apparently had little impact on Defendants, who proceeded to let the Court-imposed deadline pass by without compliance.

For all those reasons, the Court finds that a dual preclusion and presumption sanction is appropriate and that lesser sanctions would not be efficacious. *See Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d 262, 270-71 (S.D.N.Y. 2011) (granting, at summary judgement stage, plaintiff's "request to preclude [d]efendants from introducing any evidence, whether documents or testimony, in support of their claimed deductions from gross revenue" based on defendants' failure to turn over purchase and sale records during discovery and further determining amount of damages plaintiff was entitled to based on defendants' admitted gross profits).

### 3.    Duration of Noncompliance

"As to the third factor, duration, '[c]ourts have found noncompliance for a period of several months sufficient to warrant dismissal or default,' whereas 'lesser sanctions are appropriate' in situations when the period of noncompliance is 'relatively short.'" *Thani v. Hanke*, No. 20 Civ. 4765 (JPC), 2023 WL 5744288, at *12 (S.D.N.Y. Sept. 6, 2023) (alteration in original) (quoting *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d at 361).

The record is clear that Defendants cured some degree of their noncompliance within days of the deadline and of Plaintiffs' motion for sanctions. And had

Defendants fully complied within that period, the Court might have found non-monetary sanctions unwarranted. But because RSF has—to this day—failed (without explanation) to provide a full set of tax returns, and because all Defendants have failed to provide profit and loss statements, the duration of noncompliance now exceeds six months, and non-monetary sanctions clearly are warranted here.

### 4.    Notice of Consequences

Finally, the Court considers whether Defendants were sufficiently on notice to the consequences of their noncompliance. Here, it is relevant to note that Defendants disobeyed not just a discovery obligation but a discovery obligation imposed by court order: Parties have "no absolute entitlement to be 'warned' that they disobey court orders at their peril." *Daval Steel Prods.*, 951 F.2d at 1366. Moreover, while the Court did not explicitly alert Defendants to the possibility of the sanctions it imposes here, Defendants are represented by counsel, and they could not be unaware that their late production of documents—and their failure to comply fully with the Court's April 7 Decision and Order—could subject them to these sanctions. The Court also notes that even after Plaintiffs moved for sanctions, Defendants only partially corrected their clear noncompliance.

The Court therefore finds that Defendants were sufficiently on notice to the consequences of their actions that imposing the sanctions contemplated here would not be unfair.

Having weighed the four factors and the circumstances of this case, the Court finds that sanctions are warranted to address Defendants' failure to provide

responsive documents to Plaintiffs' RFPs. More specifically, it finds that the dual presumption and preclusion sanction requested by Plaintiffs is appropriate, with some slight modifications. Defendants are hereby precluded from producing or relying on any documents that were responsive to Plaintiffs' RFPs—and were within Defendants' possession, custody, or control before May 14, 2025—and yet were not produced by that date.[16] Moreover, the Court deems that the average gross revenue reflected in the four years of tax returns produced by RSF will be presumed to reflect RSF's gross revenue for each year in which responsive financial documents were not produced.

### D.   Plaintiffs' Request for Attorney's Fees and Costs

Rule 37(b)(2)(C) provides for an award of attorney's fees and costs to the party who successfully moves for sanctions based on a discovery violation. Fed. R. Civ. P. 37(b)(2)(C). The rule states that

> [i]nstead of or in addition to [the possible sanctions set out in Rule 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

*Id.*; *see In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-157-GBD-FM, 2015 WL 6666703, at *2 n.1 (S.D.N.Y. Oct. 28, 2015), *adopted* 2015 WL 9255560 (S.D.N.Y. Dec. 18, 2015).

---

[16]    Plaintiffs asked the Court to "[p]reclude Defendants from producing or relying on any documents not produced by the Court-ordered deadline of May 7, 2025." (Dkt. 51 at 10 (emphasis added)). Nonetheless, because Defendants made additional—if untimely—disclosures in the following week, Defendants are not precluded from relying on those documents.

Just as with awards of attorney's fees and costs under Rule 37(a)(5), fee awards under Rule 37(b)(2)(C) may be apportioned based on who is at fault. "Rule 37(b)(2)(C) dictate[s] that a court may impose sanctions in a targeted way against the actors whom it identifies as responsible for misconduct, whether those be parties, their attorneys, or both." *Park v. Kim*, No. 20 CV 2636 (PKC)(LB), 2024 WL 5643192, at *4 (E.D.N.Y. May 1, 2024) (quoting *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 546 (2d Cir. 2023)). "The Court has wide discretion to apportion Rule 37 monetary sanctions between a party and its counsel." *Id.* (quoting *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 69 n.19 (S.D.N.Y. 2020)). In making that apportionment, a court should be guided by the question: "who is responsible for the misconduct?" *Id.*

Defendants assert that their failure to comply with this Court's order was "substantially justified, particularly with regard to the typographical error [in misnaming RSF] and the good faith effort to produce corporate and personal tax returns." (Dkt. 50 at 6). Further, they say that the "benign facts and circumstances" of this case would make an award of fees and costs "unjust." (*Id.*). Defendants appear to be referring to the fact that—in their view—this matter involves "extremely benign circumstances for an infringement case" and that—again in their view—they have been "cooperative in this case." (*See id.* at 8). But as discussed already, Defendants do not explain why they failed to timely and fully comply with this Court's clear directions in its April 7 Decision and Order. The mere fact that Defendants believe that the underlying facts of this case are "extremely benign" and that they have been

"cooperative" with Plaintiffs' counsel does not give them *carte blanche* to ignore this Court's directives and treat the deadlines it imposes as discretionary.

For those reasons, Defendants' failure to comply here was not substantially justified and a fee award would not be unjust. Plaintiffs are entitled to recover their "reasonable expenses, including attorney's fees, caused by [Defendants'] failure" to comply with the April 7 Decision & Order.[17] Fed. R. Civ. P. 37(b)(2)(C). Plaintiffs must submit documentation of their attorney's fees and expenses, as set forth below. Further, to allow this Court to apportion the fees under Rule 37(b)(2)(C), Defendants and/or their counsel should address, in any response to Plaintiff's declaration, who is responsible for the sanctioned conduct and how the payment of the fees owed should be divided among those responsible. *See Friedman v. Radujko*, 854 F. App'x 390, 393 (2d Cir. 2021) (summary order) (noting that "[d]ue process requires that courts provide notice and opportunity to be heard before imposing [such] sanctions" (alterations in original) (quoting *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999))).[18]

---

[17]    Plaintiffs may thus recover all reasonable attorney's fees and expenses spent in bringing and supporting the motion for sanctions, with one exception. Because Defendants served properly verified interrogatory responses after the motion for sanctions but before Plaintiffs filed their reply—and because this Court has declined to strike the interrogatory responses—Plaintiffs may not recover attorney's fees for the time preparing the portion of the reply seeking to strike those responses.

[18]    The Second Circuit nonetheless has made clear that "[a]s a general rule, a court is not obliged to give a formal warning that sanctions might be imposed for violation of the court's orders." *Friedman*, 854 F. App'x at 393 (quoting *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 128 F.3d 99, 102 (2d Cir. 1997)); *see also Rogue Wave Software, Inc. v. BTI Sys., Inc.*, No. 16 CIV. 7772 (VM), 2018 WL 6920770, at *9 (S.D.N.Y. Dec. 14, 2018) (stating that "'[s]everal courts within the Second Circuit have found that when a sanctions motion is brought pursuant to Rule 37(b), both the non-moving

## CONCLUSION

For the reasons explained above, the Court awards Plaintiffs $3,675 in attorney's fees for their motion to compel and fee request. Defendants and/or their counsel may address who was responsible for the conduct that necessitated Plaintiffs' motion—and thus, how payment of the fees shall be allocated—by **no later than 30 days from the date of this Decision and Order**. If Defendants and their counsel do not respond within that period, the Court will enter an order directing that the payment of these fees shall be split equally between Defendants and their counsel, and that each of Defendants shall be joint and severally liable for their half.

The Court grants in part and denies in part Plaintiffs' motion for sanctions. (Dkt. 47). More specifically, the Court denies Plaintiffs' motion to strike RSF's interrogatory responses, and it grants the other relief requested, with the modifications described above. Defendants are precluded from producing or relying on any document responsive to Plaintiffs' RFPs that was not produced by May 14, 2025, and the average gross revenue reflected in the four years of tax returns produced by RSF shall be presumed to reflect RSF's gross revenue for each year in which responsive financial documents were not produced.

Finally, the Court grants Plaintiffs' request for attorney's fees and expenses incurred in making their motion for sanctions. Plaintiffs must submit a sworn affidavit detailing the reasonable expenses, including attorney's fees, they incurred

---

party and its counsel are automatically put on notice' of the possibility of being compelled to pay attorney's fees" (quoting *Rates Tech. Inc. v. Mediatrix Telecom, Inc.*, No. 05 Civ. 2755, 2008 WL 8443564, at *7 (E.D.N.Y. Sept. 2, 2008)).

in making the motion, accompanied by any documentation demonstrating their expenditures, **no later than 30 days from the date of this Decision and Order**. Defendants will have **14 days upon the filing of Plaintiffs' affidavit** to submit a response and must address in that response who is responsible for the sanctionable conduct and how the attorney's fees should be divided among them. Plaintiffs' reply shall be filed within seven days thereafter, at which time the Court will take the matter under advisement.

SO ORDERED.

_Colleen D. Holland_
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:   Rochester, New York
         December 22, 2025